# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| THEODORE A. HEOTIS, ) | Case No. 17 C 886 |
| Bankr. Case No. 16-28071, ) | Consolidated with 17 C 889 and 17 C |
| ) | 893 |
| ) | |
| THEODORE A. HEOTIS, ) | On appeal from the United States |
| ) | Bankruptcy Court |
| Appellant, ) | Case No. 16-28071 |
| ) | Adv. No. 16 A 567 |
| v. ) | |
| ) | |
| CITY OF AURORA, ) | Judge Virginia M. Kendall |
| ) | |
| Appellee. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

In 2011, the City of Aurora, Illinois sued Theodore Heotis to foreclose on several liens that the City had placed on a piece of commercial property owned by Heotis. On August 31, 2016, the night before a hearing regarding Aurora's summary judgment motion in the foreclosure action, Heotis filed for bankruptcy. In the bankruptcy action, Heotis filed an Adversary Complaint against the City, challenging the actions that led to the City placing liens on his property. On January 6, 2017, the Bankruptcy Court decided to permissively abstain from hearing Heotis's Adversary Complaint against Aurora. The Bankruptcy Court also granted in part Aurora's Motion for Relief from the Automatic Stay, permitting the foreclosure action to proceed to a final judgment but precluding the sale of the property without court approval.[1] Heotis filed notices of appeal with this Court, challenging the Bankruptcy Court's actions.

---

[1] Orders on those rulings were entered on January 18 and 19, 2017.

1

Heotis now seeks a stay pending appeal [10]. For the reasons set forth below, Heotis's motion is denied.

## BACKGROUND

Heotis operates a used car lot at 512 Broadway in Aurora, Illinois (the "Property"). On November 26, 2002, the City issued a special use permit pursuant to Ordinance 02-121 ("Special Use Ordinance") in order to allow Heotis to conduct his business since the Property was located in a residential area. (Dkt. 10-5 at 1.) Through the Special Use Ordinance, the City placed 13 conditions on the Property's usage, mostly aimed at improving the Property's appearance and remediating environmental issues with the Property. (Dkt. 10-3 at 1–2.) On March 1, 2007, after a hearing, the Aurora City Council found that Heotis failed to comply with several of the conditions placed on the Property in the Special Use Ordinance, in particular, by failing to remove buried tires and other soil contaminants from the Property. (Dkt. 10-5 at 1; Dkt. 10-3 at 3.) The City then rescinded the special use permit. (Dkt. 10 at 4; Dkt. 10-5 at 1.)

In 2007, Aurora undertook a variety of measures to clean up the Property itself, including removing debris, tires, installing fencing, transporting an 8,000-gallon storage tank, and treating and removing non-hazardous wastewater. (Bankr.R. 9, Motion for Relief at 2; Dkt. 10 at 55–61; Dkt. 10-2 at 4.)[2] These measures cost Aurora over $900,000.[3]

---

[2] Citations to (Dkt. _____) refer to the record number that the document is assigned to on the docket of this District Court appeal, Docket 66 & 67, Case No. 1:17-C-0886, Judge Kendall. On March 1, 2017, this Court consolidated two separate cases that were on appeal to two different District Court judges, meaning that they will be addressed by this Court (Dkt. 14.). The two consolidated dockets included Adversary Docket 21, Case No. 1:17-C-0889, previously assigned to Judge Kennelly, and Adversary Docket 21, 1:17-C-0893, previously assigned to Judge Bucklo.

Citations to (Bankr.R._____) refer to the Bankruptcy Court Case No. 16-28071. Citations to the other Bankruptcy Court Orders or dockets will note the distinction to such in a footnote.

[3] Heotis claims that Aurora received a federal grant, to help pay for cleanup costs of the Property. Heotis submits that an Aurora representative informed him that he would not be responsible for the cleanup costs of the Property. (Dkt. 10 at 5.) Heotis asserts that Aurora used the grant without giving credit to him, and also states that the Bankruptcy Court made a finding of fact that the City did not use the federal grant. (Dkt. 10 at 6.)

On January 21, 2011, Aurora sued Heotis to foreclose on the liens it had entered against the Property for zoning violations and for the cost of cleaning up the Property. (Dkt. 10-2 at 4–5.) In the foreclosure action, in the Adversary Complaint, and in this appeal, the Debtor denies that he violated the conditions of the Special Use Ordinance and asserts that it was instead the City that breached the ordinance. (Dkt. 10 at 4–5; Dkt. 10 at 6.) On August 23, 2011, the state court granted the City's motion for default judgment for Count I and entered a permanent injunction enjoining Heotis's illegal use of the Property. (Bankr.R. 9, Motion for Relief at 1–2.) On April 27, 2016, the City filed a motion for summary judgment for Count II, with the hearing set for September 1, 2016. (Dkt. 1 at 9, 12; Dkt. 13-2 at 38–39.) On August 31, 2016, the day before the hearing, Heotis filed for bankruptcy ("Petition," 16 B 28071). (Dkt. 10-2 at 15.)

By the time Heotis filed for bankruptcy, the foreclosure litigation had been underway for six years and with a dispositive motion pending, discovery was closed. (Dkt. 10-2 at 12, 16; Dkt. 16 at 1.) On September 9, 2016, Aurora moved for relief from the Automatic Stay in the Bankruptcy Court. The next day, Heotis filed the Adversary Complaint (16 A 567) contesting the validity of Aurora's liens on the Property. (Dkt. 1 at 10.) On September 29, 2016, Heotis filed a Chapter 13 Plan. On November 10, 2016, the City filed a Motion to Dismiss the Adversary Complaint (Dkt. 10 at 7.)

On January 6, 2017, the Bankruptcy Court dismissed the Adversary Complaint, invoking 28 U.S.C. § 1334 (c)(1) to permissively abstain from hearing the Adversary Complaint (regarding the validity of the liens) in order to allow the foreclosure litigation to proceed. (Dkt. 10-2 at 8, 15-16; *see also* Bankr. R. 21,[4] Order Granting In Part & Denying In Part Motion to Dismiss Adversary Proceeding.) (Dkt. 10 at 7; Dkt. 10-2 at 16.) The Court also granted Aurora relief from the Automatic Stay to the extent that the Bankruptcy Court allowed the underlying

---

[4] Bankruptcy Case No.: 16-00567 (Adversary Complaint).

foreclosure action to proceed through entry of a Judgment of Foreclosure and Sale, if proven, with no judicial sale to occur without further order of court. (Dkt. 1 at 6.)

On February 1, 2017, Heotis filed notices of appeal and a separate motion to stay the enforcement of the Bankruptcy Court's order that granted relief of the Automatic Stay pending appeal of the bankruptcy case. On the same day, Heotis filed the same Motion to Stay Pending Appeal in the Bankruptcy Court. (Dkt. 10 at 2.) On February 16, 2017, the Bankruptcy Court, denied the Heotis's Motion to Stay Pending Appeal, because Aurora "failure to set forth any legal basis to stay enforcement pending appeal." (Dkt. 81; Dkt. 10 at 3.) This decision to deny the stay pending appeal was also appealed to this Court. (Dkt. 10 at 2.)

## **LEGAL STANDARD**

Federal Rule of Bankruptcy Procedure 8007(b) provides that a party may make a motion in the district court to stay pending appeal. Fed. R. Bankr. P. 8007(b)(1). Similar to a preliminary injunction, the purpose of a stay pending appeal is to mitigate the damage that can be done before the matter is substantively resolved. *See In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). Due to the similarity between stays and preliminary injunctions, the standards are the same; like a motion for a preliminary injunction, we evaluate "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *Id*.

When evaluating the request for a stay, if the underlying appeal is meritless, then the other factors need not be addressed. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). If, however, an appeal has some merit, then the Court uses a "sliding scale" approach, where "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *In re A & F Enters.,* 742 F.3d at 766

(quoting *Cavel Int'l, Inc.*, 500 F.3d at 547–48); *see also In re Quade*, 496 B.R. 520, 526 (Bankr. N.D. Ill. 2013) ("The party seeking a stay has the burden of proving it has met the first two threshold factors in a preliminary analysis, and if the Debtors succeed, all four factors are considered on a sliding scale.").

**DISCUSSION**

**I. Heotis's Likelihood of Success on the Merits**

To satisfy his burden of demonstrating likelihood of success on the merits, Heotis needs "to demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because [he] must convince [this Court] that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *Forty–Eight Insulations*, 115 F.3d 1294, 1301 (7th Cir. 1997). Heotis falls far short of meeting this standard.

Instead of making such a substantial showing, Heotis attempts to minimize his burden and suggests that because he will be irreparably harmed if a stay is not entered, he need only show a "substantial question" regarding the merits of his appeal. In support, he cites *In re Tubular Technologies, LLC*, a bankruptcy case from South Carolina that does not accurately reflect the "sliding scale" standard described above that is controlling here. Furthermore, as detailed below, because Heotis cannot demonstrate that he will suffer irreparable harm if a stay is not entered, his burden to demonstrate a likelihood of success on the merits is high.

**A. Permissive Abstention**

The Bankruptcy Court permissively abstained from hearing Heotis's Adversary Complaint. Permissive abstention, which is governed by 28 U.S.C. § 1334(c)(1), allows bankruptcy courts to abstain from hearing a particular proceeding in the interest of justice, in the interest in comity with state courts, or due to concerns regarding respect for state law. In

reaching the conclusion that abstention was appropriate, the Bankruptcy Court assessed the issue looking at 12-factors typically considered by bankruptcy courts, and found that nine of the factors weighed in favor of permissive abstention. *See In re Hearthside Baking Co.*, 391 B.R. 807, 818 (Bankr. N.D. Ill. 2008).

The factors considered by the Bankruptcy Court were: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (citing *In re Eastport Assoc.*, 935 F.2d 1071, 1075–76 (9th Cir. 1991). "No one factor is particularly determinative in a decision to abstain, as each factor's degree of relevance and importance is dependent on the circumstances of each case." *In re Repurchase Corp.*, 329 B.R. 832, 836 (Bankr. N.D. Ill. 2005).

The Bankruptcy Court found that factors 1-5, and 7-10, weighed in favor of abstention, noting that 4 and 9 weighed "heavily" in favor of abstention, factor 6 weighed against abstention, and facts 11 and 12 were neutral. (Dkt. 10-2 at 11–16.) Heotis tacitly concedes that factors 2, 5,

and 8 weigh in favor of abstention, agrees that factors 11 and 12 are neutral, and argues, without substantive support that the rest of the factors weigh against abstention. (Dkt. 10 at 11-13.)

This Court reviews the Bankruptcy Court's decision to permissively abstain from hearing the Adversary Complaint pursuant to 28 U.S.C. § 1334(c)(1) under an abuse of discretion standard and considers the Bankruptcy Court's application of the twelve factors flexibly. *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184 at 1189; *In re Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). "[The 12 factors'] relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative. At the same time, because §1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d at 1189.

Heotis has not shown that he will be able to demonstrate that the Bankruptcy Court abused its discretion in abstaining from hearing the Adversary Complaint. First, he tacitly concedes that three of the factors weigh in favor of the abstention. Those factors, which include the extent to which state law predominates and the feasibility of severing the state law claims, were significant in the Bankruptcy Court's determination and weigh heavily in favor of abstention. *See In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) ("Under bankruptcy law the presence of a state law . . . is a significant consideration."). In attacking the Bankruptcy Court's alleged errors as to the remainder of the factors, Heotis's argument is conclusory and completely devoid of any case citations. This completely fails to meet the demanding standard of likelihood on the merits. *See Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1304 (affirming district court's stay denial because claimant failed to make "the required strong

showing of likelihood of success on the merits" because their arguments were conclusory and void of case support).

Even if Heotis had substantively addressed the Bankruptcy Court's evaluation of the remaining factors, he would be unable to demonstrate that the court abused its discretion. The application of abstention would assist the efficient administration of the estate, as the foreclosure litigation has been ongoing for approximately seven years and the Adversary Proceeding seeks to relitigate those claims. Additionally, as the Bankruptcy Court pointed out, resolving Heotis's bankruptcy matter is not contingent on the resolution of the foreclosure matter or the sale of the Property. As to the nature of the applicable law, the dispute identified in the Adversary Complaint involves state law claims, weighing in favor of abstention, as the state court is in the best position to resolve these issues. *See In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (affirming decision to permit relief from automatic stay to allow state court to make forcible entry determination because it was a "narrow area of state law," when Debtor filed bankruptcy petition three days before summary judgment hearing and forcing Bankruptcy Court to make that determination would "not be a particularly efficient use of judicial resources"). The fourth factor also weighs in favor of abstention as there is a related proceeding, which has been litigating the same issues found in Heotis's Adversary Complaint for seven years. Heotis claims, without support, that the Bankruptcy Court is the right forum to resolve these issues. It is not unreasonable to conclude that he wishes to have a fresh start at litigating these issues before the Bankruptcy Court because he was on the precipice of receiving an adverse judgment, indicative that he is forum shopping, another factor which weighs in favor of abstention. The Bankruptcy Court is also in the best position to determine whether the burden of its own docket weighs in

favor of abstention, especially when considering that many of the other factors weigh in favor of abstention.

B.     **Relief from Automatic Stay**

In addition to abstaining from hearing the Adversary Complaint, the Bankruptcy Court also found that it was appropriate to grant partial relief from the Automatic Stay, determining that the foreclosure matter could proceed to a judgment but that a sale could not proceed without approval of the court. In coming to that conclusion, the Court applied a three-factor test, which is similar to the standard for evaluating the stay here, and evaluates whether there would be great prejudice to either party, considers the hardship to the parties, and weighs the likelihood of the creditor prevailing on the merits. *See In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991). The Bankruptcy Court found that all factors weighed in Aurora's favor. (Dkt. 10-2 at 16.) The Bankruptcy Court also found that considerations of judicial efficiency weighed in favor of granting relief from the Automatic Stay. *Id.*

Heotis's argument that the Bankruptcy Court erred in granting partial relief from the automatic stay is hard to follow. First, he argues that he will suffer great prejudice and endure hardship if the foreclosure matter proceeds because the foreclosure action puts him "in great peril" because he lacked counsel (ostensibly in the foreclosure action) at the time he filed for bankruptcy. He also argues that there is no proof that Aurora will prevail on the merits and that the Bankruptcy Court improperly focused on the procedural posture of his case.

The first two factors, hardship and prejudice, bear resemblance to the determination regarding irreparable harm discussed below. For the same reasons Heotis will not be irreparably harmed if this Court declines to impose a stay pending appeal, he similarly is not prejudiced and will not suffer hardship through the partial stay relief ordered by the Bankruptcy court. Heotis's

9

identification of hardship and prejudice is predicated on the fact that he lacked counsel in the foreclosure action at the time he filed for bankruptcy. Heotis wishes this Court (or the Bankruptcy Court) to give him a "do-over" for his own failures to adequately defend the foreclosure action. Whatever hardship or prejudice resulted from his failure to defend the foreclosure proceeding can only be blamed on Heotis and it is not this Court's responsibility to delay the consequences of his own malfeasance.

In addition to showing a lack of prejudice or hardship to himself, the Bankruptcy Court found that Aurora would be greatly prejudiced if the foreclosure action were stayed due to the prolonged nature of the foreclosure action and further delays in seeking a just conclusion to that prolonged litigation. These first two factors weigh heavily in favor of stay relief.

As to the last factor, Heotis has failed to demonstrate that Aurora will not prevail on the merits. Indeed, as the Bankruptcy Court rightly pointed out, Aurora already succeeded in a favorable outcome as to Count I and was moving towards judgment as to Count II when Heotis filed for bankruptcy.

II. **Irreparable Harm**

When evaluating irreparable harm, we look to the harm "that will result to each side if the stay is either granted or denied in error."[5] *In re A & F Enters., Inc. II*, 742 F.3d at 766. "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *In re Quade*, 496 B.R. at 527–28 (quotation omitted) "A movant's fear of harm occurring that is only speculative is insufficient to meet the definition of an irreparable injury." *Id.* at 528. "Not only must the harm

---

[5] Heotis misstates the standard for evaluating irreparable harm, stating that the court evalutates "whether *the appellant* will suffer irreparable injury *absent a stay.*" (Dkt. 10 at 12.) (misquoting *In re A & F Enters., Inc. II*, 742 F.3d at 766).

alleged rise above being speculative in nature, but to be considered irreparable, economic injury alone is ordinarily not enough." *Id.*

Heotis argues that if a stay is not entered pending appeal, he will suffer irreparable harm because (1) Aurora's liens will be proven valid; and (2) "other creditors will be injured by the loss of collateral and or income to allow for payments under the plan." (Dkt. 10 at 15-16.)

To his first point, even if the underlying foreclosure action is allowed to proceed and the state court enters an adverse judgment against him in the foreclosure action, that still does not constitute irreparable harm. The relief from Automatic Stay entered by the Bankruptcy Court was limited in that the Bankruptcy Court permitted the underlying foreclosure action to proceed only through entry of a Judgment of Foreclosure and Sale, but the Automatic Stay remains in place to prevent a judicial sale. (Dkt. 1 at 6.) A party does not suffer irreparable harm when seeking an order staying or enjoining a foreclosure action until they face the prospect of "immediate transfer of possession of the property." *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 780 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 897 (2016). In *Townsend*, the Seventh Circuit also noted that Illinois law provides a number of protections against irreparable harm in foreclosure actions, and federal courts also have the authority to stay the effect of a judgment pending appeal, something that the Bankruptcy Court has done here. Heotis will not suffer irreparable harm if a stay pending appeal is not granted because he is protected by the Automatic Stay that remains in place and other protections imparted by Illinois law. Additionally, in more procedurally analogous circumstances, district courts within this Circuit have repeatedly found that permitting a foreclosure action to proceed does not create irreparable harm. *See Hollowell v. JPMorgan Chase Nat'l Ass'n*, No. 3:16-CV-487 RLM, 2016 WL 7404447, at *2 (N.D. Ind. Dec. 22, 2016) (denying motion to stay pending appeal when there was underlying foreclosure matter

pending because, inter alia, "any injury he might suffer is not irreparable"); *Dailey v. Home Fed. Sav. & Loan*, No. 95 C 6952, 1996 WL 131180, at *1 (N.D. Ill. Mar. 21, 1996) (finding no irreparable harm because movant "could be adequately compensated by damages if they lost their interest in residential property through wrongful foreclosure."); *In re Hamilton*, 95 B.R. 564, 565 (N.D. Ill. 1989) (finding that debtors were not entitled to stay pending appeal because they had not shown they would suffer irreparable harm if their home was wrongfully foreclosed upon). For these reasons, Heotis would not suffer any irreparable harm if this matter is not stayed pending appeal.

Heotis also argues that if the Property is sold, he will be deprived of income, which could harm his other creditors. (Dkt. 10 at 16.) As discussed above, the portion of the Automatic Stay that remains in place prevents the Property from being sold. Therefore, there is no current potential for the harm that Heotis identifies. Furthermore, this argument is predicated on harm to others—potential creditors—not any parties to the action before the Court. In support of this argument he cites, *In re Quade*, 496 B.R. at 528. In that matter, a stay pending appeal was deemed necessary because if a stay were not imposed, a creditor, who was a party to the action, would face a material risk of never receiving a judgment from the debtor. Here, unlike in *Quade*, there are no such creditors. In fact, outside of Aurora, other creditors have made claims totaling $3,128.39 against the bankruptcy estate. (Dkt. 10-1 at 5; Dkt. 16 at 3.) Because the deadline for filing claims has passed, these are the only claims the Debtor has to address in his Plan payment. (Dkt. 16 at 3–4.)

### III. Public Interest

Because Heotis has not met his burden on the first two factors, there is no need for the Court to substantively address whether a stay pending appeal is in the public interest. *See Forty-*

*Eight Insulations, Inc.*, 115 F.3d at 1301. Even if the Court were to assess this factor, the public interest weighs in favor of not entering a stay pending appeal. In addition to concerns regarding maintaining integrity of the judicial system and comity, the public interest will be served by the timely resolution of the foreclosure matter, which has spanned over seven years and likely hundreds of thousands of taxpayer dollars.

## **CONCLUSION**

For the reasons stated herein, Heotis's Motion to Stay Pending Appeal [10] is denied.

_____
Honorable Virginia M. Kendall
United States District Court

Date: September 28, 2017